NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RECEIVED
FEB 15 2012
AT 8:30
WILLIAM T. WALSH
CLERK

Valerie Jane MAYERES,

    Appellant,

v.

ECAST SETTLEMENT CORP.,

    Appellee.

Bankruptcy Case No. 10-44816

Civil No. 11-6394 (AET)

**MEMORANDUM OPINION & ORDER**

THOMPSON, U.S.D.J.

### I.   INTRODUCTION

This matter comes before the Court on Debtor Valerie Jane Mayeres' Appeal [1] of the Bankruptcy Court's November 2, 2011 Order overruling the Debtor's objections to two proofs of claim filed by Appellee eCAST Settlement Corporation ("eCAST"). The Court has decided the matter based on the submissions of the parties, without oral argument, pursuant to Fed. R. Bankr. P. 8012. For the reasons stated below, the Order of the Bankruptcy Court is affirmed.

### II.   BACKGROUND

This matter arises from a dispute regarding the validity of two proofs of claim filed against the Debtor's estate in bankruptcy.

On November 8, 2010, Valerie Jane Mayeres filed a voluntary petition under Chapter 13, Title 11 of the United States Code. [Bankr. docket # 1].

On or about December 11, 2010, Chase Bank USA, N.A. ("Chase") filed a general unsecured claim in the amount of $8,600.92 for the unpaid pre-petition debt incurred on the

Debtor's credit card. The claim was designated as Claim Number 2 (Claim 2) on the Bankruptcy Court's Claims Register. Thereafter, Chase sold the Debtor's account to eCAST. On February 10, 2011, the Transfer of Claim 2 was filed with the Court. [Bankr. docket # 27]. Subsequently, on February 16, 2011, eCAST filed a Notice of Transfer of Claim Other Than For Security with the Court. [Bankr. docket # 28].

On January 3, 2011, eCAST, as assignee of Citibank (South Dakota), N.A. ("Citibank"), filed a general unsecured claim in the amount of $23,078.09 for the unpaid pre-petition debt incurred on the Debtor's Citibank credit card. The claim was designated as Claim Number 4 (Claim 4) on the Bankruptcy Court's Claims Register.

On March 15, 2011, the Debtor filed an Objection to Claim 2 which alleges that, while the Debtor did have several accounts with Chase, none were under the account number listed on Claim 2 and those accounts that she did have were paid in full. [Bankr. docket # 38]. She also filed an Objection to Claim 4 alleging that she had long suspected that a relative fraudulently used the Citibank account and the Debtor believes the amount owed is only $3,124.56. [Bankr. docket # 39].

On April 18, 2011, eCAST filed its response to the Debtor's objection. [Bankr. docket # 47]. In support of Claim 2, eCAST attached a notarized Affidavit of Sale attesting to the existence of a Chase credit card account under the account listed in Claim 2, which listed the account holder as Valerie D. Mayeres and that such account was sold by card issuer Chase to eCAST with an account balance owed by Mayeres of $8,600.92. eCAST also provided redacted copies of the Debtor's account statements, dated January 2007 through February 2010. The statements include the Debtor's name, address, the relevant redacted account number, and monthly account activity, including payments and continuing transactions on the contested

account. The Chase February 2010 statement indicates a balance due of $8,600.92. The statements also indicate that the Debtor received statements at her address each month, and that Debtor continued to make payments on the account through July 2009.

In support of Claim 4, eCAST provided copies of the Debtor's account statements, dated January 2008 through October 2010. The statements include the Debtor's name, address, the relevant redacted account number, and monthly account activity, including payments and continuing transactions on the contested account. The Citibank statements also indicate that the Debtor received statements at her address each month and that Debtor continued to make payments on the account through July 2009.

eCAST later filed a Supplement to Response and Memorandum of Law including the aforementioned documents as well as: (1) an affidavit attesting to issuance, on September 12, 2001, of the Citibank credit card and that such account as was sold by the card issuer to eCAST, with an account balance owed by Mayeres of $23,078.09; (2) a Bank1One[1] Cardmember Agreement; (3) an application for credit executed by Valerie C. Mayeres; (4) a Letter from Chase Collection Support Department to Valerie D. Mayeres, dated October 22, 2009; (5) a $34.99 charge dispute resolution letter from Chase Card Member Service to Valerie D. Mayeres, dated September 26, 2008; (6) a February 14, 2002 charge dispute letter from Valerie DeSoto Mayeres to First USA;[2] and (7) two Western Union payment documents paid to Citibank purportedly by Valerie De Soto Mayeres, dated May 14, 2009 and July 10, 2009, respectively. [Bankr. docket # 85].

On October 4, 2011, the Bankruptcy Court heard argument on the objections to eCAST's claims. (*See* Tr.) [Bankr. docket # 106]. Reading its findings of fact and conclusions of law on

---

[1] Bank One Corp. merged with J.P. Morgan Chase & Co. in 2004. *See* http://www.jpmorganchase.com/corporate/About-JPMC/jpmorgan-history.htm
[2] Per the Bank1One Cardmember Agreement, First USA is a Bank One Company.

the record, the Bankruptcy Court overruled the Debtor's objections to eCAST's claims. (*Id.*, 25:11–30:19). Although, the court found that the Debtor had rebutted the *prima facie* validity of eCAST's claims such that the burden of production had shifted to eCAST, the court ultimately found that eCAST had established by a preponderance of the evidence its entitlement to pursue recovery under its proofs of claim. (*Id.*, 27:23–28:4).

The Debtor now challenges the Bankruptcy Court's findings arguing that the court erred—first by refusing to dismiss eCAST claims because they failed to carry their evidentiary burden, and second, by abusing its discretion in concluding that the Debtor's absence from the hearing validated the authenticity of Appellee's proofs. (Appellant Br., at 10).

### III.  DISCUSSION

As a threshold matter, this Court has jurisdiction to hear appeals from final judgments, orders, decrees, and, with leave of the court, from interlocutory orders and decrees entered by the Bankruptcy Court. 28 U.S.C. § 158(a). The Court reviews the Bankruptcy Court's findings of fact for clear error. *In re Pillowtex, Inc.*, 349 F.3d 711, 716 (3d Cir. 2003); *see also* Fed. R. Bankr. P. 8013. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Baier v. Princeton Office Park, LP*, No. 10–3314, 2011 WL 345968, * 1(citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Id.* (citing *Anderson v. City of Bessemer*, 470 U.S. 564, 573(1985)). Accordingly, "where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* (citing *United States v. Yellow Cab Co.*, 338 U.S. 338, 342(1949)).

A bankruptcy court's legal conclusions, on the other hand, are subject to de novo, or plenary, review. *In re Nickels Midway Pier, LLC*, 348 F. App'x 781, 783 (3d Cir. 2009) (citing *In re Schick*, 418 F.3d 321, 323 (3d Cir. 2005)). Mixed findings of fact and law must be broken down and the applicable standards must be appropriately applied to each component. *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992). Where the appeal "calls for reviewing the Bankruptcy Court's application of law to the facts of [the] case . . . whether the application of law to fact was proper, is reviewed as an ultimate fact and is subject to plenary review because it is, essentially, a conclusion of law." *In re 15375 Mem'l Corp. v. Bepco, L.P.*, 589 F.3d 605, 616 (3d Cir. 2009) (citation omitted).

Appellant essentially argues that because eCAST did not attach a copy of the signed credit card contracts to the two proofs of claim or produce "valid assignments," the Bankruptcy Court erred in finding that eCAST had met its burden at trial. (Appellant Br., at 13–14). The Court finds, however, that the Bankruptcy Court correctly determined the evidentiary burdens for a proof of claim. Under Bankruptcy Code § 502, a properly filed claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502. A proof of claim executed and filed in accordance with the Bankruptcy Rules constitutes "prima facie evidence of the validity and amount of the claim." FED. R. BANKR. P. 3001(f). For a claim to be considered prima facie valid, a creditor must allege facts sufficient to support the claim. *In re Allegheny Int'l Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). Once a claimant has alleged facts sufficient to support its claim, the burden shifts to the objector to produce evidence "equal in force to the prima facie case" in order to negate one or more sworn facts in the proof of claim. *Id*. If the objector sufficiently negates one or more of the sworn facts, the burden reverts to the claimant to prove the validity of

5

the claim by a "preponderance of the evidence." *Id.* The burden of persuasion is always on the claimant. *Id.*

Here, although the Debtor had submitted enough information contesting the liability to rebut the prima facie case, the Bankruptcy Court found that eCAST had established by a preponderance of the evidence its entitlement to pursue recovery under its proofs of claim. (*See* Tr. 27:23–28:4). After reviewing the record as it pertains to the documentation underlying the proofs of claim, the Court finds there was ample evidence to support the Bankruptcy Judge's findings. As the Bankruptcy Court noted, both claims were accompanied by detailed account statements that were mailed to the debtor's home address, which mirrored the address on the bankruptcy petition and no argument had been made on behalf of the Debtor or documentary evidence submitted that would suggest that the address was inaccurate or that the statements were not received. (*See id.*, 28:5–16). Additionally, the statements showed continuing transactions, including payments which suggested that the Debtor would have been aware of these accounts. (*Id.*) The statements did not indicate any disputes regarding the validity of the amounts owed.

Although the Debtor now claims that the Bankruptcy Court based its conclusions on unsubstantiated documents including a hand-written letter sent to the creditor purportedly validating one of the disputed credit cards, (*see* Appellant Br., at 14–15), no attempt was made by the Debtor or her counsel to challenge the handwriting and/or exhibits. (*See id.*, 3:24–25 ("I would consent to whatever documents there are.")). Having reviewed the transcript and the underlying documents, this Court does not find clear error in the Bankruptcy Court's analysis. Based on the reasons set forth in the transcript of the hearing, it is apparent that the Bankruptcy Judge conscientiously considered all the documents submitted from both parties as evidence in

reaching the factual determination that Debtor owed the amounts at issue. While it is true that little foundation had been laid as to the authenticity of the handwritten note and other documents reviewed by the Bankruptcy Court, including the credit reports introduced by the Debtor,[3] this Court cannot say that it was clear error to consider these documents—particularly in light of the lack of objections by Debtor's counsel—given the other documentation submitted by eCAST as supportive of its claims.

The Court also does not find that the Bankruptcy Court abused its discretion in its evidentiary decisions, especially in rendering its decision in the absence of oral testimony by the Debtor. The Court notes that the Bankruptcy Judge observed the lack of witnesses in the courtroom and specifically asked the parties how they wished to proceed. (*See id.*, 3:14–21). It was the Debtor's counsel's responsibility to suggest a continuance at that time if counsel thought her client might be prejudiced by the inability to rebut the arguments raised by eCAST. Indeed, the Debtor notes that the Bankruptcy Court had previously agreed to various continuances as requested by eCAST. (Appellant Br., at 15). Instead, Debtor's counsel agreed to proceed with the argument. (*See* Tr. 3: 10–4:1). At no time during the proceeding, even as it became clear that there were potentially questions of fact that may have been helpful for the Bankruptcy Court's consideration, (*see, e.g., id.*, 14: 2–7), did Debtor's counsel request that the proceeding be continued or adjourned or that the Bankruptcy Judge delay his deliberations until additional testimony could be solicited from the Debtor. The Bankruptcy Court did not abuse its discretion in failing to provide relief that was not sought. Nor does the Court find that the Bankruptcy Judge abused his discretion in expressing some wonderment as to Debtor's absence. Failure of

---

[3] Indeed, the Bankruptcy Court noted that it was taking a permissive stance after an objection from eCAST as to the veracity of certain documents submitted the day of the hearing by the Debtor. (*See id.*, 5:1–5 ("There are a number of documents that I don't have a custodian here testifying as to their authenticity. So what's good for the goose is good for the gander. I'm going to accept all the documents and hear argument.")).

the Debtor either to appear in court or to request an adjournment so that she might be present at the hearing may reasonably give rise to speculation regarding Debtor's motives in failing to appear. The Bankruptcy Court's musings were founded upon its credibility determinations, to which this Court properly defers. *See* FED. R. BANKR. P. 8013. Because the Court cannot conclude that the Bankruptcy Court's findings were clearly erroneous or an abuse of discretion, the Court will affirm the Bankruptcy Court's November 2, 2011 Order.

## IV.   CONCLUSION

For the reasons set forth above, and for good cause shown,

IT IS on this 14th day of February, 2012,

ORDERED that the Appeal from Bankruptcy Court [docket # 1] is DENIED; and it is

ORDERED that the decision of the Bankruptcy Court is hereby AFFIRMED.

_____
ANNE E. THOMPSON, U.S.D.J.